1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          CENTRAL DISTRICT OF CALIFORNIA

10   JAORETHA F. GREGORY,              )  Case No. CV 07-836-PJW
                                       )
11                  Plaintiff,         )
                                       )  MEMORANDUM OPINION AND ORDER
12           v.                        )
                                       )
13   MICHAEL J. ASTRUE,                )
     COMMISSIONER OF THE SOCIAL        )
14   SECURITY ADMINISTRATION,          )
                                       )
15                  Defendant.         )
     _____)

16

17        Before the Court is Plaintiff's appeal of a decision by Defendant

18   Social Security Administration ("the Agency"), denying her application

19   for Disability Insurance Benefits ("DIB") and Supplemental Security

20   Income ("SSI").  For the reasons discussed below, the Agency's

21   decision is reversed and the case is remanded for further proceedings.

22        In her first claim for relief, Plaintiff argues that the ALJ

23   failed to fully and fairly develop the record by subpoenaing

24   Plaintiff's treating physician's records after the treating physician

25   failed to produce the records in response to the Agency's requests.

26   For the following reasons, the Court concludes that this claim is

27   without merit.

28

1    Plaintiff alleges that she became disabled in October 1998, due
2  to physical, mental, and emotional impairments.  (Administrative
3  Record ("AR") 47-49, 52-58.)  About six years after her alleged onset
4  date, in July 2004, she filed an application for benefits.[1]  (AR 47-
5  49.)  Her application was supported, in part, by a form filled out in
6  October 2004, by her "treating psychiatrist" Shawki Haffar.  (AR 126-
7  29.)  Dr. Haffar had first seen Plaintiff the month before she applied
8  for benefits, in June 2004.  (AR 55, 126.)  As set forth in the form
9  he submitted, Dr. Haffar was of the opinion that Plaintiff was
10 disabled.  (AR 126-29.)  This opinion was at odds with the opinions of
11 the consultative doctors, who concluded that Plaintiff's mental and
12 emotional impairments would not preclude all work.  (AR 130-54.)  In
13 addition, there were no records to support the opinion, merely the
14 opinion itself.

15    According to the ALJ, Agency staff contacted Dr. Haffar's office
16 --twice in writing and once by telephone--to request that Dr. Haffar
17 provide the Agency with additional medical records which would support
18 his opinion.  (AR 15.)  Dr. Haffar never responded to any of the
19 Agency's requests.  (AR 15.)

20    Thus, the ALJ was left with Dr. Haffar's unsupported opinion
21 professing that Plaintiff was disabled and the other doctors' views
22 that Plaintiff was not disabled.  The ALJ rejected Dr. Haffar's
23 opinion because there was no support for it and because it was

24 _____

25    [1]  Plaintiff had been on SSI in the 1990s, but her benefits were
26 terminated when she was sent to prison.  (AR 286.)  After being
   released from prison, she filed an application for benefits in January
27 2002, which was denied initially in March 2002, and upon
   reconsideration in January 2003.  (AR 59.)  Plaintiff did not seek
28 further review of that decision.

2

1   contradicted by other evidence in the record.  (AR 15.)  Instead, the
2   ALJ accepted the consulting doctors' opinions that Plaintiff was not
3   disabled.  (AR 20-21.)  Plaintiff argues here that the ALJ had a duty
4   to obtain Dr. Haffar's notes, by subpoena if necessary, and his
5   failure to do so is cause for reversing his decision.  The Court
6   disagrees.

7        Though the ALJ has a duty to develop the record and obtain all of
8   a claimant's medical records, *Smolen v. Chater*, 80 F.3d 1273, 1288
9   (9th Cir. 1996), that duty has limits.  Obviously, the ALJ is not
10  expected to drive over to a doctor's office and demand that the doctor
11  produce his records.  It is enough for the ALJ to make a good faith
12  effort to acquire the records by writing to the doctor twice
13  requesting the records and calling his office on the telephone when
14  the written requests are ignored.  This is particularly so in this
15  case where the claimant is represented by counsel who was, presumably,
16  equally capable of obtaining the records.[2]  *See*, e.g., *Tidwell v.*
17  *Apfel*, 161 F.3d 599, 602 (9th Cir. 1998).  Even assuming Plaintiff's
18  lawyer was unable to get the records prior to the ALJ's decision, he
19  could have provided them to the Appeals Council to at least show that
20  they existed and request that the Council consider them or remand the
21  case to the ALJ so that he could consider them.  Assuming this was not

22

23      [2]  It is not clear whether the ALJ informed Plaintiff's counsel
24  prior to (or at) the administrative hearing that the ALJ intended to
    discount Dr. Haffar's opinion because it was not supported by any
25  clinical findings.  This would have been the preferable course so that
    Plaintiff's counsel would have been on notice that the ALJ had
26  misgivings about Dr. Haffar's opinion and counsel could have made an
    effort to obtain the records to bolster the opinion prior to the ALJ's
27  decision.  Certainly, however, after the ALJ issued his decision,
    counsel was on notice of this defect and was either unable or
28  unwilling to obtain the records to pursue the appeals.

1  possible, Plaintiff's counsel could have obtained the records and
2  submitted them to this Court so that the Court could have seen the
3  records and concluded that they existed.

4       Plaintiff's counsel has done none of this.  He simply argues here
5  that the Court should send the case back for a new hearing to obtain
6  records that this Court, frankly, suspects do not exist.  Though
7  Plaintiff contends that she suffered from emotional problems since
8  1998, she did not start seeing this "treating doctor" until almost six
9  years later, coincidentally 20 days before she filed her application
10 in the present case.  It is unclear how many times she saw him before
11 he prepared the form he submitted to the Agency, which professed her
12 disability.  Though the doctor notes on the form that he had been
13 seeing her monthly since June 29, 2004, and had last seen her on
14 October 13, 2004, (AR 126), Plaintiff reported to the Agency in
15 November 2004, that she had first seen him on May 20, 2004, and had
16 last seen him on July 20, 2004.  (AR 55.)  The strength of Dr.
17 Haffar's opinion was not in the views expressed in the form; rather,
18 it was in the work-up he performed to reach these views.  Absent back-
19 up data, the opinion was next to worthless and the ALJ properly
20 rejected it.  *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002)
21 (holding ALJ need not accept conclusory medical opinions unsupported
22 by clinical findings); *see also*, 20 C.F.R. § 416.902 (excluding from
23 category of treating physician doctors who are consulted merely to
24 obtain report to support disability application).  The ALJ's failure
25 to subpoena the back-up records does not undermine his decision.  For
26 these reasons, Plaintiff's first claim is rejected.

27      In her second claim of error, Plaintiff alleges that the ALJ
28 erred when he failed to take into account the opinion of a consulting

4

doctor that Plaintiff "may function most optimally in a semi-isolated work setting."  (AR 135.)  In her third claim of error, Plaintiff argues that the ALJ erred when he failed to include this limitation in the hypothetical question to the vocational expert.  For the following reasons, these claims are rejected.

In order for an ALJ to rely on the testimony of a vocational expert in response to a hypothetical question, the ALJ must include all of a claimant's limitations in the hypothetical question.  *Robbins v. Social Security Administration*, 466 F.3d 880, 886 (9th Cir. 2006).  An ALJ does not, however, have to include alleged limitations which are not supported by substantial evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1164-65 (9th Cir. 2001) ("An ALJ is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence.")

The ALJ noted in his decision the consulting doctor's view that Plaintiff "might" function best if she were in a semi-isolated work setting.[3]  (AR 15, 135.)  The ALJ did not, however, include that condition in the hypothetical question to the vocational expert.  Nor does it appear that he was required to do so.  The doctor's comment in this regard was not a medical opinion but, rather, a speculative comment about optimal work conditions for Plaintiff.  But the doctor is not tasked with determining optimal workplace conditions.  In fact, even the ALJ is not tasked with this job.  Instead, the ALJ attempts

---

[3]  The consulting doctor used the word "may," (AR 135), which the ALJ changed to "might."  (AR 16.)  The Court does not find any appreciable difference between the terms and will use them interchangeably.

to identify work that a claimant is capable of doing.  Because the
doctor's speculation that Plaintiff "might function most optimally in
semi-isolated work" is not equivalent to a restriction or limitation,
the ALJ was not required to include it in the hypothetical question to
the vocational expert or otherwise address it in his decision.  *See*
*Moore v. Astrue*, 2008 WL 695400, at *23 (W.D. Mo. 2008) ("This
statement that plaintiff was likely to miss four days of work per
month was due to 'bad days', not to side effects of medication or any
specific impairment.  A speculation based on 'bad days' is not the
type of treating physician opinion contemplated by the regulations.").

Finally, Plaintiff argues that the ALJ erred when he failed to
discuss the "testimony" of lay witness Susan Phillips.  (Joint Stip.
at 17.)  Phillips was Plaintiff's friend and shared a room with her in
a rehabilitation center where the two lived.  (AR 73.)  She filled out
a questionnaire, which described various difficulties Plaintiff
endured in everyday life, including forgetfulness, delusions,
frustration, and short temper.  (AR 73-81.)  The Agency argues that
the ALJ's failure to address Phillips's comments does not amount to
error because her comments were not probative, contradicted the
medical evidence, and were only minimally related to Plaintiff's
ability to work.  (Joint Stip. at 19-20.)  For the following reasons,
the Court disagrees and remands the case for further proceedings on
this issue.

An ALJ must consider lay witness testimony concerning a
claimant's ability to work, *Stout v. Comm'r, Soc. Security*, 454 F.3d
1050, 1053 (9th Cir. 2006), and may discount the testimony only if he
gives "reasons that are germane to each witness." *Dodrill v. Shalala*,
12 F.3d 915, 919 (9th Cir. 1993).  Testimony from someone in a

position to observe a claimant's symptoms and daily activities is "competent evidence" that must be considered. *See Smith v. Bowen*, 849 F.2d 1222, 1226 (9th Cir. 1988).

The Agency contends that the ALJ did not err in failing to discuss Phillips's testimony because it was not probative of Plaintiff's functional limitations or her ability to work and contradicted the medical evidence. (Joint Stip. at 19.)  The Agency argues further that, even if the ALJ erred in failing to address the testimony, the error was harmless because the evidence was not critical to his decision. (Joint Stip. at 6-7.)  The Court rejects both arguments.

First, the ALJ did not reject the testimony for the reasons now raised by the Agency.  This is important because the Court can only affirm the ALJ's decisions for reasons he stated in his decision. *See Stout*, 454 F.3d at 1054 (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

Second, the Court finds that the ALJ's error was not harmless. The general rule is that an error is harmless when it is "inconsequential to the ultimate nondisability determination." *Id*. at 1055.  Normally, where an ALJ "silent[ly] disregard[s] ... lay testimony about how an impairment limits a claimant's ability to work," such failure to comment constitutes reversible error. *Id*. at 1055-56.  An exception to this general rule applies where the Court can "confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Id*. at 1056; *see also Robbins*, 466 F.3d at 885 (holding failure to consider lay witness testimony was not harmless error); *but cf. Zerba v. Commissioner of Social Sec. Admin.*, 2008 WL

7

2074356, at *1 (9th Cir. 2008) (affirming decision denying disability benefits even though ALJ failed to discuss husband's testimony where testimony was similar to claimant's and two other lay witnesses' testimony, all of which the ALJ had rejected). Here, the Court cannot so conclude. The ALJ found that Plaintiff's testimony was not entirely credible. (AR 18.) Yet, Mrs. Phillips's testimony corroborated many of Plaintiff's complaints. (AR 73-81, 274-90.) Crediting Phillips's testimony might have caused the ALJ to reach a different conclusion regarding Plaintiff's credibility and, ultimately, Plaintiff's disability. Because the ALJ did not explain why he rejected Mrs. Phillips's testimony, the case is remanded for further consideration of that issue.

IT IS SO ORDERED.

DATED:    July  17  , 2008.


PATRICK J. WALSH
UNITED STATES MAGISTRATE JUDGE